UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLAS LUNA-ROMERO,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, *et al.*,<br><br>Respondents. | Case No. C26-3971-MLP<br><br>ORDER |

This is Petitioner Nicolas Luna-Romero's second petition for writ of habeas corpus, filed under 28 U.S.C. § 2241, challenging his immigration detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

On July 6, 2026, this Court found Petitioner to be a member of the *Rodriguez Vazquez* Bond Denial Class and ordered Federal Respondent to provide him a bond hearing under 8 U.S.C. § 1226(a). *See Luna-Romero v. Hernandez*, 2026 WL 1945169 (W.D. Wash. July 6, 2026). Petitioner now challenges the Immigration Judge's ("IJ") July 21, 2026 denial of his request for bond. (Dkt. # 1.) Respondents filed a return (dkt. # 7) along with declarations from their counsel, Barbara Andrade (dkt. # 8 ("Andrade Decl.")), and ICE Enforcement and Removal

Operations ("ERO") Deportation Officer Christopher Hubbard (dkt. # 9 ("Hubbard Decl.")). Petitioner filed a traverse in reply. (Dkt. # 11.) The Court, having reviewed the parties' submissions and the governing law, GRANTS the petition (dkt. # 1) and ORDERS Petitioner's release from immigration custody for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen Mexico who entered the United States in 2000 following a previous grant of a voluntary return. (Hubbard Decl. ¶¶ 3–5.) Petitioner has remained continuously in the United States for 26 years. (Pet. at 2.) Petitioner has established substantial family, community, and economic ties during his many years of residence in the United States. (*Id.* at 3.) The record before the IJ established that Petitioner had maintained a lengthy and consistent employment history in the construction and contracting industry, including employment with one contractor from approximately 2008 through 2014 and a working relationship with another contractor beginning in approximately 2018 and continuing into 2026. (*Id.*; Andrade Decl., Ex. C (Bond Order), Ex. E (Bond Hearing Audio).)

For approximately five years, Petitioner operated his own contracting business, which maintains business certifications and insurance. (Pet. at 3.) According to counsel's representations at the bond hearing, Petitioner had paid business taxes since approximately 2021. (*Id.*; Andrade Decl., Ex. E.) Petitioner proposed a release plan to the IJ with his close friend and sponsor, a United States citizen residing in Seattle, Washington. (*Id.*) His sponsor submitted a letter pledging to provide Petitioner with housing, assist him in resuming his contracting work, and help ensure his compliance with any conditions of release or immigration proceedings. (*Id.*) Petitioner also has significant personal and family relationships in the United States. (*Id.*) He has

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

maintained a committed relationship with his partner for approximately five years, and the couple intends to marry. (*Id.*) Petitioner has developed a close relationship with his partner's daughter for whom he intends to continue serving as a father figure. (*Id.*) Petitioner has a 2010 arrest for driving under the influence that reportedly resulted in a conviction for negligent driving in the first degree in 2019, amended from the original DUI charge. (Pet. at 4.) Petitioner's Form I-213 does not reflect any criminal history, however. (Andrade Decl., Ex. B.)

On June 6, 2026, ERO encountered Petitioner during a targeted enforcement operation in Tacoma, Washington. (Hubbard Decl. ¶ 4-5.) During the operation, immigration officers observed an individual matching Petitioner's description enter a vehicle known to be associated with him. (*Id.*) ERO conducted a vehicle stop and confirmed Petitioner's identity with a previously obtained photograph and Petitioner's driver's license listing his name. (*Id.*) Petitioner was arrested and transported for further processing. (*Id.*)

On July 21, 2026, Petitioner appeared with counsel at his court-ordered bond redetermination hearing. (Andrade Decl., Ex. C, Ex. E). The IJ denied Petitioner's request for bond, finding that he failed to meet his burden of demonstrating that he was not a danger to the community or a flight risk. (*Id.*; Hubbard Decl., ¶ 11.) Petitioner did not file an appeal of the IJ's bond decision. (Hubbard Decl., ¶ 11.) On September 8, 2026, Petitioner appeared with counsel for an individual hearing on the merits of his applications for relief from removal. (Andrade Decl., Ex. D (Order of the IJ).) The IJ denied Petitioner's applications for relief from removal. (*Id.*) On September 25, 2026, Petitioner filed an appeal of the IJ's decision with the BIA. (Hubbard Decl., ¶ 16.) The BIA has not yet adjudicated Petitioner's appeal in his removal proceedings. (*Id.*)

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner alleges the IJ abused her discretion in assessing the required factors for determining whether Petitioner constituted a flight risk or danger, in violation of 8 U.S.C. § 1226. (Pet. at 7.) Petitioner also contends that he should not be required to exhaust his administrative remedies before seeking federal habeas relief here or, alternatively, that the requirement should be waived. (*Id.* at 16.) Respondents argue that Petitioner should be required to exhaust his administrative remedies and fails to address the merits of Petitioner's claim that his bond hearing was "arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis." (*See generally* Resp.; Pet. at 1.)

### A. Exhaustion of Administrative Remedies

There is no dispute that Petitioner has yet to exhaust his administrative remedies as to the IJ's bond decision given that he did not appeal his bond determination. The Court thus considers whether exhaustion should be required here.

In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record and reach a proper decision; (2) waiving the requirement would encourage bypass of the administrative

scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

Even where these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Assuming without deciding that the *Puga* factors weigh in favor of exhaustion, this Court finds that waiver of the exhaustion requirement is appropriate here as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000. Government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. Sept. 30, 2025). Petitioner has been detained since June 2026 and requiring him to wait another six months, conceivably more, for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026). Petitioner has been a productive member of his community for over two decades, is helping to raise a U.S. citizen minor child, is in a long-term relationship, has a dated criminal conviction for negligent

driving, and has a stable release plan with a U.S. citizen willing to sponsor him. For these reasons, the Court finds that requiring Petitioner to wait another six months or longer is not efficacious and therefore waives any exhaustion requirement.

**B. Bond Denial – Abuse of Discretion**

Habeas courts review an IJ's bond determination for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779-80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *Guerra*: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. Here, the IJ relied solely on Petitioner's criminal conviction from 2019 and the fact that he had been in the United States for so long without

attempting to gain lawful status. (Andrade Decl., Ex. E.) The IJ did not meaningfully engage with Petitioner's evidence relating to his employment, character references, release plan, responsibilities for a minor U.S. citizen, paying taxes, or his long-term relationship. (*See id.*) Absent any apparent connection between Petitioner's one, dated criminal conviction for reckless driving and his risk of flight or danger, the Court cannot discern a basis to deny bond.

The IJ cited to Petitioner's limited opportunities for relief from removal as a factor supporting a finding of flight risk. (Andrade Decl., Ex. E.) The BIA has identified that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. at 805 (BIA 2020). However, the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)). While it might be rational to draw the conclusion that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, the IJ failed to make that connection to Petitioner's individual circumstances or otherwise discuss whether the "relative strengths or weaknesses of Petitioner's claims for relief outweighed" the significant evidence that weighed against finding him to be a flight risk. *Soriano v. Hernandez*, 830 F.Supp.3d 1071, 1081 (W.D. Wash. 2026). Again, Petitioner has been living in the United States for over two decades, he is in a stable relationship, helps to care for a U.S. citizen child, and has minimal criminal history—

evidence the IJ did not meaningfully discuss in her oral ruling. Moreover, Respondents' failure to even address the *Guerra* factors to support the IJ's findings leads the Court to the assumption that even Respondents could not harmonize the logical gaps between the IJ's bases for denying bond and the evidence before her.

In sum, the cited reasons for denying bond do not stand on their own (or in the aggregate) and it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor. *See, e.g., Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion). No reasonable adjudicator could conclude on this record that Petitioner poses a flight risk or is a danger to the community. The IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

**C. Remedy**

Petitioner asserts that release is appropriate because he is not a flight risk or a danger. Respondents do not address the appropriate remedy beyond their general request that the petition be denied. Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). This jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Garcia Miranda*, 2026 WL 1328227, at *5 (same); *Soriano*, 2026 WL 969764, at *6 (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same); *W.T.M. v. Bondi*, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026) (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

## IV. CONCLUSION

Based on the foregoing, the Court hereby ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED.

(2) Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3) Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are strongly encouraged to meet and confer prior to the filing of any such motion.

Dated this 13th day of November, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge